UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAVOY SENIOR HOUSING CORPORATION ) | |
| ) | Civil Action |
| and ) | File No.: 8874/2008 |
| ) | |
| SAVOY LIBERTY VILLAGE, LLC ) | |
| ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| TRBC MINISTRIES, LLC ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT TRBC MINISTRIES, LLC'S MOTION TO DISMISS
FOR LACK OF JURISDICTION OR, ALTERNATIVELY, TO REFER THIS MATTER
TO THE BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(3), Defendant TRBC Ministries, LLC ("TRBC"), by counsel, submits this memorandum in support of its Motion to Dismiss for Lack of Jurisdiction or, Alternatively, to Refer This Matter to the Bankruptcy Court for the Southern District of New York.

**I.     INTRODUCTION**

**A.     Background**

This litigation involves a real estate development project located on a 140-acre parcel of land on Candlers Mountain in Campbell County, Virginia ("the Site"). The Site was to be developed by Liberty Village Associates Limited Partnership ("LVA" or the "Debtor") into a retirement community (the "Project").

The parties entered into the LVA Partnership Agreement (the "LVA Agreement"), which designated Savoy Senior Housing Corporation ("Savoy Senior Housing") as the general partner with 1% ownership; Savoy Liberty Village, LLC ("SLV") as a limited partner with 89% ownership (together, "Savoy"); and TRBC as a limited partner with 10% ownership. The LVA Agreement contained an exclusivity clause providing, in pertinent part, that:

> TRBC hereby covenants and agrees with Savoy that during the ten (10) year period after the date hereof [April 14, 2000], unless acting with the prior written consent of Savoy or unless the partnership is sooner terminated, it will not (and will not permit its Affiliates, Partners, managers, officers and directors), directly or indirectly, within the United States to engage in the business of, or acquire or own, manage, cooperate, finance, join, control or participate in the acquisition of ownership, management, operation, financing or control of, or be connected as the principal, employee, officer, director, Partner, partner [sic], independent contractor, investor, joint venture partner, agent, affiliate, representative, consultant, or otherwise with, any business which is in the business of owning, operating, developing, constructing or managing a Senior Housing Community located within twenty five miles of the City of Lynchburg, Virginia.

Certification of Scott S. Flynn ("Flynn Cert."), Exhibit A, LVA Limited Partnership Agreement at 31, § 10.13 (the "Exclusivity Clause").

In 2004, the Project failed and LVA filed for bankruptcy in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). In re Liberty Village Associates Limited Partnership, Case No. 04-11627-ALG. During the bankruptcy proceeding, Savoy (through its principal, Jacob A. Frydman) employed General Capital Partners, LLC ("GCP") to identify a prospective purchaser of the Project which constituted the Debtor's principal asset. GCP, as Savoy's agent, identified American Heritage Communities, Inc. ("AHC") as a potential purchaser of the Project. In late 2004, GCP introduced Savoy to AHC. Savoy gave AHC permission to deal with TRBC regarding the future marketing of the retirement community.

Throughout 2005, Savoy negotiated with AHC regarding the sale of certain assets in which Savoy claimed an ownership interest, including the right to enforce the Exclusivity Clause. AHC, as purchaser, insisted that all rights under the Exclusivity Clause be transferred as part of LVA's assets. Savoy claimed an interest in these rights and attempted to negotiate payment for them to the potential detriment of the Debtor and its creditors. Further, Savoy threatened to sue AHC over these claims.

During the course of the Liberty Village bankruptcy, Savoy ultimately agreed that all rights to enforce the Exclusivity Clause belonged to the Debtor and would be transferred to AHC/Liberty Village LLC (the acquiring entity). The Bankruptcy Court issued a confirmation order ("Confirmation Order") on March 6, 2006, that transferred the exclusivity rights from the Debtor to the acquiring entity. Flynn Cert., Exhibit B, Confirmation Order, at 8 and Exhibit A attached thereto. Under the express terms of the Confirmation Order, Savoy also released all claims against AHC and AHC/Liberty Village, LLC. Confirmation Order at 12-13.

### B.   The Funding of the Bankruptcy Plan

Against this background, (1) the plan was confirmed (Confirmation Order); (2) Savoy executed the release as required by the Confirmation Order (Id. at 12-13); (3) the right to enforce the Exclusivity Clause was transferred to AHC/Liberty Village LLC (Ex. A to Confirmation Order); and (4) the bankruptcy plan was then funded and implemented within the Court's July 14, 2006 deadline.

TRBC was first approached by AHC about funding the bankruptcy plan in mid-March 2006, after the bankruptcy plan was confirmed. AHC came to TRBC because a proposed AHC lender, CareVentures, had declined to fund the plan. Prior to that time, TRBC had no contact

with AHC regarding AHC's ultimate request that TRBC invest in AHC/Liberty Village LLC. TRBC declined to participate in funding the bankruptcy plan.

Ultimately, the bankruptcy plan was funded, in part, by Liberty University, Inc. ("Liberty"), a Virginia non-stock corporation. In exchange for a payment of $2.25 million, Liberty became the 85% majority member in AHC/Liberty Village LLC, which subsequently changed its name to Liberty Ridge, LLC ("Liberty Ridge").[1]

Ten days after the plan was funded, on July 24, 2006, the Department of Justice filed a Clean Water Act ("CWA") suit against, inter alia, Savoy and Jacob Frydman. That litigation, in which the government alleged ongoing CWA violations on the Liberty Ridge property, has, to date, prevented any further development of the Liberty Ridge project. During the pendency of the government's CWA litigation, the Liberty Ridge site has been used to house students of Liberty. There are no current plans to develop Liberty Ridge into a retirement community for members of the Thomas Road Baptist Church, followers of the Falwell ministries, or anyone else.

### C. Plaintiffs' Complaint

Plaintiffs' Complaint in this action is premised on TRBC's allegedly undisclosed purchase of the Debtor's bankruptcy assets, including the purchase of the right to enforce the Exclusivity Clause that Savoy asserts inures to its benefit. Savoy admits that "in connection with a Plan of Reorganization approved by the Bankruptcy Court in March 2006, AHC purchased the real property of LVA." Flynn Cert., Exhibit C, Plaintiffs' Complaint, at ¶ 31. However, Savoy further claims that "undisclosed to the Bankruptcy Court, LVA's Liberty Mountain property was

---

[1] In the summer of 2006, AHC requested that Liberty fund the bankruptcy plan. During the first week of July, when no other options were available to fund the plan, Liberty agreed to do so to avoid foreclosure on the LVA site which is located adjacent to other real property owned by Liberty.

4

transferred, not to AHC, but to Liberty Ridge LLC, an entity owned and controlled by TRBC." Id. at ¶ 34. According to Savoy, "[u]pon information and belief, AHC was nothing but a front, controlled by TRBC for the purpose of acquiring LVA's land in a manner consistent [sic] with its fiduciary duties and its duty of good faith." Id. at ¶ 35. Under its sixth cause of action, labeled "Intentional Misrepresentation/Fraud," Savoy also claims that "TRBC, with the intention that the Savoy Plaintiffs rely, caused AHC to make misrepresentations to the Savoy Plaintiffs regarding AHC's independence from TRBC.[2]" Id. at ¶ 55.

The Complaint fails for four reasons. First, TRBC never purchased or maintained ownership or control over the Debtor's assets. Second, the bankruptcy asset purchase that Savoy claims was "undisclosed" was in fact orchestrated by Savoy's own agent. Third, the real estate development central to the Complaint does not currently operate as a senior or retirement community and therefore there can be no violation of the Exclusivity Clause. Fourth, and most importantly for this motion, Savoy expressly released all claims against the acquiring entity (including claims under the Exclusivity Clause) as a part of the confirmed bankruptcy plan. Each of these issues is related to the Debtor's confirmed bankruptcy plan.

Accordingly, the Complaint constitutes an attack on the Debtor's bankruptcy plan confirmed by the Bankruptcy Court. In the Confirmation Order, the Bankruptcy Court retained exclusive jurisdiction over suits such as this one. Confirmation Order at 18. Therefore, the Bankruptcy Court is the proper venue in which to resolve this dispute because it is familiar with (1) the prior litigation, (2) the documents (including the Exclusivity Clause) and the parties involved, and (3) the resulting confirmed bankruptcy plan.

---

[2] The allegations quoted above constitute the basis for Savoy's "factual" claims against TRBC and fall far short of the specificity requirements for alleging fraud set forth in Fed. R. Civ. P. 9(b).

5

## II.   ARGUMENT

Savoy's assertion of ownership of the right to enforce the Exclusivity Clause directly contradicts the express terms of the Confirmation Order. Therefore, Savoy's Complaint against TRBC constitutes a challenge to the Confirmation Order, and this matter should be resolved by the Honorable Allan L. Gropper in the United States Bankruptcy Court for the Southern District of New York.

The Bankruptcy Court's jurisdiction over this matter is manifest. Because the issue of the ownership of the Debtor's asset (the right to enforce the Exclusivity Clause) is fundamental to this action, the acquiring entity's rights under LVA's chapter 11 case are directly at issue. Therefore, this Court may refer this matter to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a): "[e]ach district court may provide that any or all proceedings arising under title 11 **or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district**" (Emphasis added.)

Indeed, the Confirmation Order itself expressly provides for jurisdiction over this litigation (Confirmation Order at 18-19): "the [Bankruptcy] Court shall retain and <u>have exclusive jurisdiction over any matter</u> . . . arising in or related to this chapter 11 case and the Plan." Id. at 18 (emphasis added). Specifically, and not by way of limitation, the Bankruptcy Court retained exclusive jurisdiction:

- to hear and determine disputes arising in connection with or relating to the Plan, the interpretation, implementation or enforcement of the Plan, or the extent of any entity's obligations incurred in connection with or released under the Plan;

- to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

- to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

- to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

Id. at 19.

### III. CONCLUSION

For the foregoing reasons, TRBC Ministries, LLC respectfully requests that this Court dismiss this matter for lack of jurisdiction or refer the matter to Judge Gropper of the United States Bankruptcy Court for the Southern District of New York.

TRBC MINISTRIES, LLC


By: /s/ Scott S. Flynn
Scott S. Flynn (SF 7469)
John P. Leonard (pro hac vice application pending)
MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Attorneys for Defendant,
TRBC Ministries, LLC
88 Pine Street – 24th Floor
New York, New York 10005
Telephone: (212) 483-9490
Facsimile: (212) 483-9129


W. Scott Street, III, Esquire (pro hac vice application pending)
A. Peter Brodell, Esquire (pro hac vice application pending)
Samuel T. Towell, Esquire (pro hac vice application pending)
WILLIAMS MULLEN
1021 East Cary Street – 17th Floor
P.O. Box 1320
Richmond, Virginia 23218-1320
(804) 643-1991

### CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David C. Wrobel
WROBEL & SCHATZ LLP
1040 Avenue of the Americas
New York, NY 10018
(212) 421-8100


/s/ Scott S. Flynn
Scott S. Flynn, Esq. (SF7469)


1673470v3